**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON**

**CIVIL ACTION NO. 09-134-DLB**

**LISA F. SIMPKINS**                                                                                          **PLAINTIFF**


vs.                                    **MEMORANDUM OPINION & ORDER**


**MICHAEL J. ASTRUE, Commissioner
SOCIAL SECURITY ADMINISTRATION**                                                      **DEFENDANT**

\* \* \* \* \* \* \*

This action was brought pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, will affirm the Commissioner's decision, as it is supported by substantial evidence.

### I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Lisa Simpkins applied for a period of disability, disability insurance benefits, and supplemental security income on October 31, 2005.[1] (Tr. 43-47). At the time of filing, Plaintiff was 35 years old and alleged a disability onset date of October 1, 2004. (Tr. 43). Plaintiff alleges that she is unable to work due to sleep apnea and heart problems. (Tr. 64). Her application was denied initially and again on reconsideration. (Tr. 33-41). At Plaintiff's request, an administrative hearing was conducted on March 15, 2007. (Tr. 42, 395-421). On June 4, 2007, Administrative Law Judge (ALJ) Frank Letchworth ruled that Plaintiff was

---

[1] Both Plaintiff's motion for summary judgment and the ALJ's opinion state that Plaintiff filed for benefits on October 13, 2005. The application itself, however, is dated October 31, 2005. (Tr. 43-47).

not disabled and therefore not entitled to a period of disability, disability insurance benefits, or supplemental security income. (Tr. 13-20). This decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on February 27, 2009. (Tr. 6-9).

On April 20, 2009, Plaintiff filed the instant action. (Doc. #2). The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. #10, 13).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Even if there is evidence favoring Plaintiff's side, the Commissioner's findings must be affirmed if supported by substantial evidence. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99

F.3d 780, 781-82 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant still performs substantial gainful activity; Step 2, whether any of the claimant's impairments, alone or in combination, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether a significant number of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner to identify "jobs in the economy that accommodate [Plaintiff's] residual functional capacity." *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.    The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since applying for benefits. (Tr. 15). At Step 2, the ALJ found that Plaintiff's mild single vessel coronary artery disease, essential hypertension, obesity and sleep apnea constituted medically severe impairments. (Tr. 15). At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17).

At Step 4, the ALJ found that Plaintiff possessed the residual functional capacity (RFC) to perform the exertional and nonexertional requirements necessary for medium work, which includes the ability to lift and carry fifty pounds occasionally and twenty-five pounds frequently as well as the ability to sit, stand, or walk six to eight hours with periodic breaks for rest. (Tr. 17). In determining the Plaintiff's RFC, the ALJ appropriately

considered factors beyond the objective medical evidence in assessing the severity of Plaintiff's symptoms such as: (1) Plaintiff's daily activities; (2) the location, duration, frequency and intensity of Plaintiff's pain or other symptoms; (3) medication the Plaintiff uses to alleviate pain or other symptoms; and (4) treatment other than medication used to relieve pain or other symptoms. (Tr. 18-19). *See* 20 C.F.R. § 404.1529(c).

The ALJ concluded that Plaintiff has the ability to perform her past relevant work as a dietary aide and cake decorator since her past relevant work does not "require the performance of work-related activities precluded by the [Plaintiff's] residual functional capacity." (Tr. 19). As soon as a disability determination can be made, the sequential evaluation process ends. 20 C.F.R. § 404.1520(a). Once the ALJ determined Plaintiff could perform her past relevant work and was not disabled, it was unnecessary for him to consider Step 5 of the analysis. ALJ Letchworth therefore concluded that Plaintiff has not been under a disability within the meaning of the Social Security Act since Plaintiff's alleged onset date of October 1, 2004. (Tr. 20).

 **C. Analysis**

Plaintiff raises three arguments on appeal. First, Plaintiff contends ALJ Letchworth erred in failing to adequately account for her morbid obesity and its propensity to exacerbate her other medical impairments. Second, Plaintiff argues the ALJ erred in failing to consider relevant testimony of the vocational expert (VE) in determining Plaintiff's residual functional capacity. Lastly, Plaintiff asserts the ALJ impermissibly substituted his opinion for that of her treating and examining physicians. The Court will address each of these challenges in turn.

 **1. Plaintiff's Obesity Impairment**

First, Plaintiff argues that ALJ Letchworth failed to properly evaluate her obesity impairment when making his disability determination. The Social Security Administration removed obesity from the Listing of Impairments in 20 C.F.R., Subpart P, Appendix 1, effective October 25, 1999. Although no longer considered an impairment in isolation, obesity must still be considered during the sequential evaluation process. Soc. Sec. Reg. 02-01p. Specifically, the ALJ must consider obesity when assessing whether an individual has a medically determinable impairment, whether that impairment is severe and meets a listing in the Listing of Impairments, and also in determining an individual's RFC. *Id.*

Social Security Regulation 02-01p further delineates three levels of obesity adopted from the National Institute of Health's clinical guidelines, which establishes the medical criteria used for diagnosing obesity; namely, a person's body mass index (BMI). In her motion for summary judgment, Plaintiff meticulously summarizes medical records dating between 2005 and 2007 that, at times, indicate a BMI above 40, which SSR 02-01p classifies as Level III obesity–the most extreme level of obesity classified under the regulations. Given the severity of her obesity and its propensity to exacerbate or create additional medical impairments, Plaintiff contends her obesity was not properly evaluated.

Plaintiff's argument is unpersuasive. In addition to classifying obesity levels based on BMI, SSR 02-01 further provides "[t]hese levels describe the extent of obesity, but they do not correlate with *any specific degree of functional loss.*" (emphasis added). Accordingly, an ALJ must still consider obesity in conjunction with the entirety of the medical record to determine a plaintiff's "specific degree of functional loss," or RFC. After careful consideration of the entire medical record, ALJ Letchworth concluded Plaintiff's medical conditions–although exacerbated by obesity–did not fall within the SSA's Listing of

5

Impairments, and further that Plaintiff's RFC allowed performance of medium level work. His determination was based both on (1) objective medical evidence devoid of physician-imposed functional limitations and (2) appropriate consideration of the factors delineated in 20 C.F.R. § 404.1529(c).

Specifically, the ALJ found it significant that none of Plaintiff's treating or examining physicians "assigned any limitation to her ability to function," an observation this Court also finds significant and one the Plaintiff does not controvert with any medical evidence. The ALJ, moreover, concluded Plaintiff's wide-ranging daily activities of driving, shopping for groceries, preparing meals, completing chores, and caring for her children–one of whom is only four years old–were "not indicative of a[n]... incapacitated individual." (Tr. 19). Thus, the ALJ properly accounted for Plaintiff's obesity pursuant to SSR 02-01p and in light of the objective medical evidence in the record.

### 2. Hypothetical Question Posed to the VE

Plaintiff next argues the ALJ's decision is not supported by substantial evidence because he failed to consider the vocational expert's testimony that Plaintiff would be incapable of performing her past relevant work if assessed against a nonexertional limitation requiring three to four naps daily as a result of sleep apnea. (Tr. 420). In other words, Plaintiff asserts the VE's answer to the ALJ's hypothetical question constitutes substantial evidence of disability, which the ALJ failed to consider. Plaintiff's argument, however, lacks merit.

The ALJ is permitted to rely on the VE's answer to a hypothetical question only to the extent the assumptions included in the hypothetical are supported by substantial evidence. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Stated

differently, the VE's answer may constitute substantial evidence "only if the question accurately portrays [plaintiff's] individual physical and mental impairments." *Id.* (quotations and citations omitted). Here, the question posed to the VE contained facts that assumed Plaintiff's testimony about her functional limitations was entirely credible. (Tr. 420). In response, the VE indicated Plaintiff would be unable to perform her past relevant work if she required accommodation for unscheduled naps throughout the workday. Despite the VE's response to this question, it is the function of the ALJ–not the vocational expert–to assess the credibility of a plaintiff's testimony. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

The ALJ is required to incorporate in the hypothetical questions to the VE only those limitations he accepts as credible, *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003), and ALJ Letchworth did not find credible Plaintiff's testimony that she needed 3-4 naps daily on average of 45-60 minutes each, explaining her testimony was inconsistent with the record medical evidence. (Tr. 18-19). The ALJ cited Dr. Timmireddy's notes, which reflect that Plaintiff reported only mild daytime sleepiness in May 2005 as well as medical records from April, May, July, and September 2006, and February 2007 that report no loss of sleep. (Tr. 19, 135, 303, 307, 312, 314). Plaintiff argues her frequent need to sleep during the day is well-documented by her treating physicians, yet she fails to direct this Court's attention to any such record evidence. (Doc. #10, at 15). Because Plaintiff's testimony was not supported by substantial evidence, the ALJ was not permitted to rely on the VE's response to the hypothetical question including a nonexertional limitation of unscheduled daytime naps.

### 3. ALJ's Assessment of the Objective Medical Evidence

Lastly, Plaintiff asserts the ALJ impermissibly disregarded the findings and judgment of both her treating and examining physicians, and instead, relied on his own interpretation of the medical evidence. Plaintiff fails, however, to articulate which medical findings and opinions the ALJ impermissibly disregarded. In failing to direct this Court's attention to the medical findings or opinions the ALJ allegedly disregarded, or in what manner the ALJ's RFC was impermissibly inconsistent with the assessment of Plaintiff's treating and examining physicians, Plaintiff's argument lacks the specificity required by this Court on appeal. *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006).

When a plaintiff neglects to offer any particularized argument to support her assertion, this Court will not devise arguments on Plaintiff's behalf, nor will the Court engage in an "open-ended" review of the entire record to determine which opinions–if any–the ALJ failed to assign proper deference. *Id.* Accordingly, "[i]n the absence of any such focused challenge, we decline to broadly scrutinize any and all treating physician's opinions in the record to ensure that they are properly accounted for in the ALJ's decision." *Id.* Consistent with Sixth Circuit precedent, this Court will not conduct an "open-ended" review of the entire medical record in search of all *possible* inconsistencies to determine whether the ALJ properly performed his duty as trier of fact in resolving the conflicts in the evidence. *Id. See also Richardson v. Perales*, 402 U.S. 389, 399 (1971).

ALJ Letchworth's disability determination was made in accordance with proper legal standards and is supported by substantial evidence, and will therefore not be disturbed on appeal.

### III. CONCLUSION

Therefore, for the reasons stated herein, the Court concludes that the ALJ's RFC determination and his finding that the Plaintiff was not disabled for purposes of the Social Security Act is supported by substantial evidence.  Accordingly,

**IT IS ORDERED as follows:**

1. The decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. #10) is hereby **DENIED**;

3. Defendant's Motion for Summary Judgment (Doc. #13) is hereby **GRANTED**;

4. A separate Judgment affirming this matter will be entered contemporaneously herewith.

This 15th day of February, 2010.



Signed By:
*David L. Bunning* DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\6-09-134-SimpkinsMoo.wpd